ROBERT W. HATCH, II
HATCH HALSTEAD, LLC
730 17th ST., STE. 200
DENVER, CO. 80202
TELEPHONE: (303) 298-1800
FAX: (303) 298-1804

ATTORNEY FOR WESTERN CAPITAL
PARTNERS, LLC

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-60452 |
| EDRA D. BLIXSETH. ) | |
| ) | |
| Debtor. ) | |
| ) | |
| RICHARD J. SAMSON, as trustee for the ) | Adversary No. 10-00094 |
| Chapter 7 estate of Edra D. Blixseth, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| WESTERN CAPITAL PARTNERS LLC ) | |
| Defendant. ) | |

**WESTERN CAPITAL PARTNERS LLC'S REPLY IN SUPPORT OF ITS MOTION FOR ATTORNEY FEES PURSUANT TO C.R.S. 4-9-625 (UCC §9-625(i))**

Defendant Western Capital Partners LLC ("**WCP**"), through its undersigned counsel, hereby submits the following Reply in Support of its Motion for Attorney Fees pursuant to C.R.S. 4-9-625 (UCC § 9-625(i)), as enacted in the state of Colorado.

I.   <u>INTRODUCTION</u>

Count IV of the initial Complaint and of the Amended Complaint, recently dismissed by this Court, purported to state a cause of action for Commercially Unreasonable Sales "as enacted in the states of California, *Colorado*, and Montana, and any other comparable state laws."

1

Section 4-9-625 of the Colorado Uniform Commercial Code includes a provision that expressly states "[t]he prevailing party in any legal action … *under this section* may also recover reasonable attorneys' fees and reasonable legal expenses." Accordingly, WCP, as the prevailing party on Count IV, should recover its reasonable attorneys' fees and costs incurred in disputing Count IV.

Richard J. Samson, as Trustee for the Chapter 7 Estate of Edra Blixseth, ("**Samson**") of course has objected to WCP's request for attorney fees, now asserting for the first time that Colorado law has no applicability to the facts alleged in the Complaint, even though the relevant foreclosures in question were conducted in Colorado pursuant to Colorado law. Notably, Samson does not cite to any new facts that have come to light since the Complaint was filed that would justify his new position, but rather relies on facts that were known well in advance of the filing of his Complaint. In other words, Samson has improperly forced WCP to incur attorney fees disputing the very allegations set forth in the Complaint that he now asserts have no place in this litigation. In addition, Samson irrationally asserts that WCP is not the prevailing party, notwithstanding the fact that this Court has issued an order dismissing Count IV of the Complaint on WCP's motion.

Finally, Samson suggests that he has acted in good faith and that this Court should therefore use its discretion in denying WCP its request for fees. This position, of course, ignores the conflicting positions he has taken before this Court as well as his failure to adequately investigate his claims before filing the Complaint, which he has previously been reprimanded for. Indeed, an award of WCP's reasonable attorneys' fees and reasonable legal expenses is more than justified in this matter, due to the fact that Samson never had a good faith basis to assert Count IV.

II.     STATEMENT OF RELEVANT FACTS

As this Court is well aware, Debtor Edra Blixseth ("**Blixseth**") personally guaranteed repayment of a $13 million loan WCP made to various Montana entities owned by Blixseth and her son Matthew R. Crocker ("**Crocker**"). (Cmplt. at ¶ 17.) In order to secure Blixseth's guaranty, WCP obtained a superior and properly perfected UCC security lien on a significant portion of Blixseth's personal property. (*Id.* at ¶ 19.)

On August 7, 2009, WCP filed a proof of claim with the Court in the amount of $13,965,144.17, including interest and attorneys' fees. *Id.* at ¶ 50. On or about March 22, 2010, WCP conducted a UCC foreclosure sale in Colorado on some of the assets that secured its loan. *Id.* at ¶ 51. WCP was the successful bidder at the sale, purchasing Blixseth's interests in Monarch Design, LLC and Blixseth Family Investments, LLC ("**BFI**"), as well as her contractual rights against Michael Sandoval, Atigeo LLC and xPatterns LLC under a 2007 Letter Agreement.[1] *Id.* The foreclosure sale was conducted pursuant to Colorado's version of the Uniform Commercial Code.

On or about October 21, 2010 Samson brought suit against WCP alleging five counts, including Count IV, which claimed that WCP's foreclosures were commercially unreasonable sales "[p]ursuant to UCC § 9-625, as enacted in the states of California, *Colorado*, and Montana, and any other comparable state laws." (emphasis added.) Samson's sole basis for concluding that the foreclosure sales were commercially unreasonable is the fact that the $250,000 value

---

[1] In effect, WCP purchased what can only be described as "contingent" assets, the collection of which has required hundreds of thousands of dollars in litigation costs with no real end in sight, and little clarity as to the ultimate financial recovery, if any, WCP may obtain.

3

assigned to the collateral was "wildly at variance with the value identified on the Schedules." (Cmplt. at ¶ 52.) No other substantive basis was asserted.

Of course, it is well settled that a low price, standing alone, is insufficient to establish a commercially unreasonable sale. *See* MCA § 30-9-507(2); *see also Lilly v. Terwilliger,* 796 P.2d 199, 203-04 (Mont. 1990); *Dulan v. Montana Nat'l Bank of Roundup*, 661 P.2d 28, 31-32 (Mont. 1983), and WCP has endeavored during the course of this litigation to uncover additional legal theories and facts that could support Count IV. Throughout discovery, Samson has refused to produce *any* facts and/or documents supporting his allegations related to Count IV, other than to say that the sales price seemed too low.

Prior to completing the foreclosures, Mr. Samson's attorneys suggested that WCP was not conducting commercially reasonable sales, and WCP responded with requests that the Trustee explain his allegations and specifically identify how WCP's foreclosure sales were improper. In fact, WCP even invited Samson's attorneys to suggest how WCP could improve its UCC foreclosure sales and obtain higher bid price at those sales. *See* Exhibits A and B attached hereto. Samson's attorneys did not respond. Finally, on May 14th of 2010, counsel for WCP sent a letter to Samson's attorney regarding his repeatedly vague allegations concerning deficiencies in WCP's UCC foreclosure sales. A copy of the May 14, 2010 Letter is attached hereto as Exh. C.

Samson's counsel never articulated any factual or legal concerns regarding WCP's UCC sales in response to this May 14th letter. Samson's attorneys chose to ignore the fact that WCP spent thousands of dollars to advertise its sales in *The Wall Street Journal*, gave notice of its sales to all parties in these bankruptcy proceedings, used local media outlets to advertise its sales, and employed respected consignment establishments to conduct the sales. When pressed in

4

Discovery to "[d]escribe each and every fact that Samson contends supports the allegation that WCP improperly conducted UCC sales of Edra's personal property," Samson again could only cite to the value of the assets as listed on the Schedules. There were literally no facts identified related to the manner in which the sales were conducted. A copy of the relevant discovery responses are attached hereto as Exh. D.

### III. ARGUMENT

#### A. Samson failed to adequately investigate the claims prior to filing the Complaint in accordance with Fed. R. Civ. P. 11 and Federal Rule of Bankruptcy Procedure 9011(b)[2]

Samson first argues that Colorado law has no applicability to the facts alleged in the Complaint, apparently trying to distract the court from his own allegations and the fact that certain sales were conducted in Colorado. It was Samson who asserted a claim under Colorado law and forced WCP to incur expenses researching that body of law and defending the allegations. It was Samson who never amended the Complaint to remove the allegations related to the Colorado law. It was Samson who failed to supplement his discovery responses to remove the Colorado allegations. And now, it is Samson who is alleging that Colorado law has no applicability to the instant proceedings. Interestingly, his argument is not founded on any newly discovered facts during the instant litigation; rather, his argument is based on the *same facts* that were in his possession well in advance of the filing of the instant complaint.

Samson asserts that Montana and California law, not Colorado law, govern the foreclosure sales. In support thereof, Samson cites to certain facts related to the logistics of the sale, all of which were in Samson's possession well in advance of the filing of the Complaint. Samson ignores two key facts in his argument. First, the relevant UCC foreclosure sales did, in

---

[2] WCP does not intend to intimate it is seeking sanctions with this motion, and only references Rule 11 for the duties set forth therein.

5

fact, take place in the State of Colorado and the sales were governed by Colorado law. In addition, the facts Samson relies on in support of his position that California and Montana law apply were all within his possession at the time of the filing of the Complaint.

Samson ignores this, and simply suggests that the Trustee "only intended to notify Western Capital that the Trustee asserted claims under whatever law would happen to govern the transactions at issue." (Response at p. 8). The Complaint, however, unequivocally alleges that Colorado law applies. Indeed, it is likely that, had Samson been successful on his Count IV, he, too, would have sought an award of attorney fees. Samson should be estopped from arguing Colorado law does not apply.

Samson's new averment that he intended to notify WCP that some unspecified law would apply is inconsistent with his obligations under FBRP 9011 and Fed. R. Civ. P. 11. Samson's failure to conduct a reasonable and competent inquiry into Colorado's application to the relevant facts is a violation of Rule 11. "Filing a complaint in federal court is no trifling undertaking. An attorney's signature on a complaint is tantamount to a warranty that the complaint is well grounded in fact and 'existing law' (or propose a good faith extension of the existing law) and that it is not filed for an improper purpose" *Christian v. Mallei, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). Where "the complaint is the primary focus of Rule 11 proceedings, a district court must conduct a two-prong inquiry to determine: (1) whether the complaint is legally sufficient or factually 'baseless' from an objective perspective, and (2) if the attorney has conducted a 'reasonable and competent inquiry' before signing and filing it," *Christian*, 286 F.3d at 1127. In other words, if Samson never had a basis to assert the applicability of Colorado law, as he now admits, he has violated Rule 11.

### B. Samson should be estopped from taking inconsistent positions

Samson should be estopped from now taking an inconsistent position from that asserted in the complaint. "Judicial estoppel, sometimes also known as the doctrine of preclusion of inconsistent positions, precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997). Here, Samson asserted that Colorado law applies based on the facts alleged in the Complaint. Now that the application of Colorado law is no longer in his favor, he asserts that it no longer has any application. This position is disingenuous, and warrants the application of the equitable doctrine of estoppels, which is specifically "intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.'" *Id.* (internal citations omitted).

Indeed, WCP has previously tried to narrow the issues in this litigation in order to avoid the expenditure of unnecessary legal fees. In similar fashion, Count II of the Complaint vaguely alleges that it is asserted pursuant to California and "other comparable state laws." On or about May 2, 2011, WCP served requests for admissions requesting that Samson admit that Montana law, Colorado law, and no other comparable state laws apply to the allegations set forth in the Complaint. Samson refused to respond, alleging that WCP was seeking a conclusion of law and thus he had no legal duty to respond to the Requests to Admit. (A copy of the Responses to Requests to Admit are attached hereto as Exh. E.) In response, counsel for WCP emailed Samson's counsel and explained that the objections were improper and that "the spirit of the requests was simply to narrow the issues by eliminating those that can be." Samson's counsel responded by refusing to narrow the issues and asserting that Samson has no obligation to do so

7

at this stage. Samson's responses were served less than three months before the trial was scheduled. (A copy of the relevant email chain (beginning at the bottom) is attached hereto as Exh. F.)

### C.  WCP is the Prevailing Party to Count IV

Samson next argues, nonsensically, that WCP is not a prevailing party. Count IV of the Complaint brought pursuant to C.R.S. 4-9-625, was dismissed pursuant to WCP's Motion to Dismiss. The result of that order is clear, Samson is precluded from reasserting that claim against WCP in any jurisdiction. The Ninth Circuit has unequivocally stated that "a defendant is a prevailing party following dismissal of a claim if the plaintiff is judicially precluded from refiling the claim against the defendant in federal court." *Cadkin v. Loose*, 569 F.3d 1142, 1150 (9th Cir. 2009).

By contrast, Samson asserts that WCP must prevail over the entire litigation before the Trustee can be subject to C.R.S. 4-9-625(i). This simply is not true. The remaining counts are not brought under the Colorado UCC, and the Colorado UCC will have no applicability to those counts.

Samson cites to two cases in support of his position, neither of which apply to the instant proceedings. In *Bedard v. Martin*, 100 P.3d 584 (Colo. App. 2004), the court addressed whether "attorney fees may be recovered as damages in an action for breach of warranty where the plaintiff incurred fees defending its interests against the true owner." *Atmel Corp. v. Vitesse Semiconductor Corp.*, 160 P.3d 347, 351 (Colo. App. 2007) *citing to Bedard*. Certainly this has no bearing on the issues here. In *Chartier v. Weinland Homes, Inc.*, the court deferred consideration of the claim for fees until after the merits of the case were decided. However, that case did not involve a mixed action, and the fees being sought related to the entire proceeding,

thereby justifying the delayed evaluation.  Conversely, the count for which WCP is entitled to fees is decided.  WCP is the prevailing party on that count, and there is no reason to wait until the end of the litigation.  Indeed, waiting may only complicate matters as WCP will continue to incur fees and the matter will become even more muddied.

In *Friel v. Daley*, 230 F.3d 1366 (9th Cir. 2000), the Ninth Circuit addressed a situation similar to the one Samson claims exists here.[3]  There, the plaintiff prevailed on his claims for injunctive relief and attorney's fees, while the final judgment was entered in favor of defendant.  The court found that, in such a case where there is a mixed judgment, the Court "can assess costs to reflect the amount of success each party achieved."  *Id.*  The court found that "the costs awarded to the defendant stemmed entirely from that portion of the case it won" and, therefore, the district court did not abuse its discretion by awarding fees.  *Id.*  This Court should do the same here.

### D.  Samson's actions justify the award of attorney fees.

It is important to understand WCP sought to avoid this litigation, at least with regards to Count IV, by communicating with Samson's attorneys and requesting both information in advance of the sales that would have satisfied Samson as to their legitimacy as well as information after the sales that would have explained their position.  Samson's attorneys never responded, and instead brought suit.

Although Samson's allegations related to Count IV are vague and unclear, it appears Samson was alleging that WCP underpaid for specific interests owned by Debtor Edra Blixseth.  Specifically, Samson alleges that the values paid for purchasing Blixseth's interests in Monarch Design, LLC and Blixseth Family Investments, LLC ("**BFI**"), as well as her contractual rights

---

[3] Samson has asserted that WCP will probably never be the prevailing party with respect to the entire litigation.  Obviously WCP disagrees, and feels confident in its ability to defend what it considers to be frivolous claims.  Nevertheless, even accepting Samson's assertion as true, it is irrelevant for purposes of this motion.

9

against Michael Sandoval, Atigeo LLC, and xPatterns LLC under a 2007 Letter Agreement.[4]  *Id.* As this Court likely knows, and can take judicial notice of, BFI is currently being sued for $8 million, and literally has no assets which appear to have value.[5]  In addition, Samson has represented to this very Court that the Sandoval contract is a worthless asset.  Indeed, Samson has stipulated to this in Adv. No. 09-105, alleging that he has investigated the claim therein and, based on facts that all took place well in advance of the filing of the Complaint in this matter, the contract has no value.  (Adv. No. 09-105, Dkt. 240.)  Samson has forced WCP to incur costs disputing Count IV, notwithstanding the fact that the *only* factual allegation in support of this claim, however, was that the "value assigned to these assets is … wildly at variance with the value identified on the Schedules."  (Complaint at ¶ 52.)

Furthermore, Samson has acted in bad faith during this litigation.  WCP filed its Motion to Dismiss Count IV, identifying Samson's failure to properly plead the elements required to assert a claim under UCC § 9-625. (Dkt. 19.)  Samson filed his opposition to the Motion to Dismiss Count IV on or about May 31, 2011, and requested a hearing on the Motion, to take place on July 12, 2011.  (Dkt. 29.) Meanwhile, Samson was working behind WCP's back to "settle" the Sandoval contract, which formed the basis of Count IV.  In the Motion filed by Samson in Case No. 09-60452, seeking this Court's approval of a purported settlement agreement between the Trustee and Plaintiffs Atigeo LLC and xPatterns LLC and Third Party Defendant Michael Sandoval, Samson acknowledged "the framework for a possible resolution was negotiated" at the June 16, 2011 mediation and that Settlement is a result of

---

[4] In effect, WCP purchased what can only be described as "contingent" assets, the collection of which has required hundreds of thousands of dollars in litigation costs with no real end in sight, and little clarity as to the ultimate financial recovery, if any, WCP may obtain.
[5] Should this Court so desire, WCP is happy to produce a copy of the relevant pleadings filed in the Superior Court of California for the County of Orange, Central District, Case No. 30-2011 00452666

discussions with Blixseth and a review of the terms set forth in her Affidavit. (Case No. 09-60452, Dkt. 991 at p. 1.)

In other words, while WCP's motion to dismiss Count IV was pending before the Court, Samson had personal and direct knowledge that Count IV lacked any legitimate basis. Yet he did not inform WCP, much less the Court, of this "new development." Rather, he hid it, and forced WCP to incur unnecessary expenses replying in support of its Motion and preparing for an oral argument that he requested. Finally, it wasn't until *after* Samson and WCP conducted mediation that he withdrew his objection to Count IV. The timing demonstrates his attempt to use Count IV as leverage in negotiating a settlement, notwithstanding his lack of any legal or factual basis for a claim.

### i. Samson has previously been reprimanded for failing to properly investigate claims

Twice before, at least to the knowledge of WCP, Samson has been reprimanded for failing to adequately investigate potential claims and/or allegations before making representations to the Court. The first time occurred with regards to an adversary proceeding against CrossHarbor. As this Court may recall, on or about January 29, 2010 the Trustee represented to the Court that he had investigated potential claims against CrossHarbor and found that none existed. Specifically, in response to questioning by Counsel, Samson stated that he had conducted a "very close scrutiny" of the CrossHarbor loan documents and that he didn't see any claims that lie by this … estate … against CrossHarbor. (Case No. 09-60452, Dkt. 726 at p. 71.) However, after this Court granted standing upon WCP to pursue a claim on behalf of the Estate against CrossHarbor, Samson filed a Motion to Reconsider just over a month later, on March 9, 2010, seeking to have standing re-conferred upon him and taken away from WCP. (Case No. 09-60452, Dkt. 650.)

This Court found the Trustee's actions to be troubling because, the Trustee was ready to release any and all claims against CrossHarbor because he ascribed no value to them. Then, just months later, the Trustee was before the Court arguing that he is the proper party to pursue the claims against CrossHarbor. (Case No. 09-60452, Dkt. 726 at p. 98-103.) In fact, on the day before the May 11, 2010 hearing, Samson retained out-of-state counsel to investigate and pursue potential claims against CrossHarbor. In other words, the Trustee was ready to release claims against CrossHarbor without conducting an investigation. Then, after WCP took it upon itself to conduct that investigation, the Trustee sought to recover the claims he had previously intended to ignore.

In similar fashion, on October 12, 2010 in a hearing in Adv. No. 09-105 on Samson's Motion to Bifurcate and Motion to file Second Amended Counterclaim and Third Party Complaint, and on WCP's Motion to file Third-Party Complaint and objections thereto, this Court again expressed concern at Samson's lack of investigation prior to the filing of certain tort allegations directed against the Sandoval Entities. (Adv. No. 09-105 Dkt. 146 at pp. 6-7.) Specifically, this Court was "troubled" by Samson's allegations that Edra had been "duped" into the Letter Agreement with Sandoval. *Id.* As Samson's counsel, Dave Cotner, acknowledged, had he simply followed up with Edra he would have known that to be false. *Id.* at pp. 14-29. Cotner reluctantly acknowledged that he failed to properly investigate the facts. *Id.*

In sum, Samson has twice, at least with regard to WCP, failed to adequately investigate facts before making affirmative representations to the Court. Both times this Court has expressly stated that it was "troubled" by Samson's actions and implored Samson and his attorney to take better caution. Yet here we are again, dealing with a count that has never had any factual or legal support, and whose only purpose was as leverage over WCP.

Samson now represents to the Court in Adv. No. 09-105 that the Sandoval Contract has no value whatsoever. This directly contradicts his pleadings, which state that the "value assigned to these assets is … wildly at variance with the value identified on the Schedules." *Id.* at ¶ 52. As a purported basis for stipulating to the repudiation of the Sandoval Contract in Adv. No. 09-105, Samson relies on three events, all set forth in Edra's affidavit. All three events occurred in advance of Edra's bankruptcy.

Samson testified before this Court that his role in Adv. No. 09-105 was to "investigat[e] the claims" related to the Sandoval contract, and to determine "whether ultimately the Atigeoparties may succeed on the allegations set forth in Count I" (the repudiation claim). As a purported basis for the stipulation, Samson relied on discussions with "the Sandoval parties, with the Atigeo parties, with Ms. Blixseth."

Put another way, if Samson had taken the time to investigate the value of the collateral before blindly asserting that the value paid was insufficient, he would have realized there was no legitimate basis to assert Count IV. He didn't. Rather he filed a complaint without investigation, waited nearly a year and continued to use it as leverage, and even waited until after the parties participated in mediation before he withdrew his opposition to WCP's Motion to Dismiss. Indeed, it is clear why he withdrew his opposition, as he could not with a straight face represent to this Court in one proceeding that the collateral is worthless while simultaneously representing to this Court in another proceeding that the collateral is worth $8.5 million. Samson has been playing fast and loose with this Court and asserting baseless allegations against WCP. Samson's bad faith conduct should not be sanctioned by this Court.

## IV. CONCLUSION

For the foregoing reasons, this Court should award Western Capital Partners LLC its reasonable attorneys' fees and reasonable legal expenses incurred in relation to Count IV of the Complaint and Amended Complaint.

DATED this 4th day of November, 2011.

HATCH HALSTEAD LLC

By: /s/ Joseph J. Novak
Joseph J. Novak, Esquire
730 17th Street, Suite 200
Denver, CO 80202
(303) 298-1800
(303) 298-1804 (Facsimile)
jnovak@hatchlawyers.com
Attorney for Western Capital
Partners LLC

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on the date below, true and correct copies of the above document were served by overnight mail to all persons/entities requesting special notice or otherwise entitled to same, and that in addition, service by mailing a true and correct copy, first class mail, postage prepaid, was made to the following persons/entities who are not ECF registered users:

None

Dated this 4th day of November, 2011.

HATCH HALSTEAD LLC

By: /s/ Renae L. Friedrichs
Paralegal